Toni Darlene Kimpel was charged, in five separate indictments, with practicing nurse midwifery without a license. This offense is a misdemeanor under § 34-19-3, Code of Alabama 1975. The trial court, holding that § 34-19-3 is "vague and ambiguous,"[1] *Page 992 
dismissed the indictments in a pretrial order. The state appeals the trial court's ruling.
 I.
Kimpel argues that this court is without jurisdiction to hear this appeal. She relies on Rule 15.7(a), Ala.R.Crim.P.:
 "[a]n appeal may be taken by the state in a felony case to the Court of Criminal Appeals from a pre-trial order of the circuit court (1) suppressing a confession or admission or other evidence, (2) dismissing an indictment, information, or complaint (or any part of an indictment, information, or complaint), (3) quashing an arrest or search warrant. Such an appeal may be taken only if the district attorney certifies to the Court of Criminal Appeals that the appeal is not brought for the purpose of delay and that the order, if not reversed on appeal, will be fatal to the prosecution of the charge."
(Emphasis added.) Kimpel notes that this court has interpreted Rule 15.7 to be the exclusive avenue for a pretrial appeal by the state in a criminal case and to be inapplicable to misdemeanors. In City of Attalla v. Smith, 596 So.2d 651, 651
(Ala.Cr.App. 1992), this court held, "[r]ule 15.7 allows pretrial appeals by the State only in felony cases. There is no provision for a pretrial appeal by the state in a misdemeanor case." We find, however, that the rationale of City of Attallav. Smith is incorrect, because it flies in the face of the state's statutory right to appeal judgments holding statutes unconstitutional.
Section 12-22-91, provides another means by which the state may appeal a trial court's judgment:
 "In all criminal cases when the act of the legislature under which the indictment or information is preferred is held to be unconstitutional, the district attorney may take an appeal in behalf of the state to the supreme court, which appeal shall be certified as other appeals in criminal cases, and the clerk must transmit, without delay, the record on appeal and the notice of appeal to the supreme court."
(Emphasis added.) This provision originally appeared as § 4515, Code of Alabama of 1886. At that time, the Supreme Court was the only appellate court in Alabama. Therefore, the term "supreme court" was not intended to deny jurisdiction to the Court of Criminal Appeals, which was established in 1969, or to our predecessor, the Court of Appeals, which was established in 1911. See, e.g., State v. Street, 117 Ala. 203, 23 So. 807
(1898) (deciding direct appeal under the predecessor to §12-22-91, in the absence of any other existing state appellate court).
The judicial history of this statute demonstrates that the Alabama Supreme Court and the Court of Criminal Appeals agree that appeals under § 12-22-91 may properly be brought initially to this court. State v. Gooden, 570 So.2d 865 (Ala.Cr.App. 1990) (affirming trial court, pursuant to § 12-22-91), State v.Franklin, 541 So.2d 593 (Ala.Cr.App. 1989) (reversing trial court, on transfer from the Supreme Court and pursuant to §12-22-91), State v. Clayton, 492 So.2d 665 (Ala.Cr.App. 1986) (reversing trial court, pursuant to § 12-22-91), State v.Woodruff, 460 So.2d 325 (Ala.Cr.App. 1984) (reversing trial court, pursuant to § 12-22-91), State v. Spurlock,393 So.2d 1052 (Ala.Cr.App. 1981) (reversing trial court, pursuant to § 12-22-91), State v. Wilkerson, 54 Ala. App. 104,305 So.2d 378 (reversing trial court, pursuant to the predecessor to §12-22-91), cert. denied, 293 Ala. 774, 305 So.2d 382 (1974). Although there are several cases in which the Supreme Court has decided a § 12-22-91 issue on direct appeal, State v. Rogers,281 Ala. 27, 198 So.2d 610 (1967), State v. Mills, 278 Ala. 188, 176 So.2d 884 (1965), rev'd on other grounds,384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966), State v. Cecil,216 Ala. 391, 113 So. 254 (1927) (deciding, pursuant to the predecessor to § 12-22-91, an appeal certified and transferred to Supreme Court from Court of Appeals), those cases were decided under § 7310, Code of Alabama of 1923, and its progeny. Section 7310 required that all appeals challenging the constitutionality of a statute must be heard *Page 993 
by the Supreme Court, as opposed to the Court of Appeals. This statute was repealed by the adoption of the Code of Alabama 1975. The codifiers considered and rejected the idea of limiting our intermediate appellate courts' jurisdiction over constitutional issues.
Under § 12-22-91, the state may appeal the trial court's judgment in any case where the trial court holds the statute creating an offense unconstitutional. State v. Gautney,344 So.2d 232 (Ala.Cr.App. 1977), and State v. Powe, 28 Ala. App. 402,185 So. 781 (1939). When a statute is held unconstitutional by a pretrial order, that order is a final judgment and the state may appeal under § 12-22-91. See §12-22-2 (stating that an appeal must be from a final judgment). See also Sparks v. State, 40 Ala. App. 551, 554, 119 So.2d 596,599 (1959) ("A final judgment, decision or order which will support an appeal, is one which puts an end to the proceedings between the parties to a cause in the court, and leaves nothing further to be done."), cert. denied, Sparks v. State, 270 Ala. 488, 119 So.2d 600 (1960). Furthermore, § 12-22-91 applies to both misdemeanor and felony cases. See State v. Hewlett,124 Ala. 471, 27 So. 18 (1899) (applying § 12-22-91 to a misdemeanor), and City of Mobile v. Welch, 572 So.2d 1322, 1323
(Ala.Cr.App. 1990) (same), quoted in Ex parte Adams,592 So.2d 641 (Ala. 1991).
Therefore, although Rule 15.7 does not give this court jurisdiction over this appeal, the state's appeal is properly before this court by virtue of § 12-22-91.[2] That portion ofAttalla v. Smith that conflicts with this opinion is expressly overruled.
 II.
The state contends that the trial court erred in concluding that § 34-19-3 was unconstitutionally vague. Section 34-19-3
states:
 "(a) It shall be unlawful for any person other than a licensed professional nurse who has received a license from the state board of nursing and the board of medical examiners to practice nurse midwifery in this state. Any person violating this sub-section shall be guilty of a misdemeanor.
 "(b) Nothing in subsection (a) of this section shall be construed as to prevent lay midwives holding valid health department permits from engaging in the practice of lay midwifery as heretofore provided until such time as said permit may be revoked by the county board of health."
When construing the language of a statute, "it is a court's duty to give effect to the intent of the legislature as expressed in the words contained in the statute." Ex parteRodgers, 554 So.2d 1120 (Ala. 1989).
In this case, both the words and the meaning of Alabama's midwifery statute are clear on the face of the statute. Section34-19-3(a) prohibits one specific category of conduct, "the practice of nurse midwifery," defined as, "[c]are for the mother during pregnancy and labor providing continuous physical and emotional support and evaluation of progress throughout labor and delivery." § 34-19-2(2), Code of Alabama 1975. These sections provide adequate notice of what conduct is prohibited.
Each of the indictments issued by a Mobile County grand jury reads in pertinent part:
 "Toni Darlene Kimpel . . . did, by agreement or contract for payment or other payment or consideration, provide care, management, evaluation, examinations, pre-natal care, advice and assistance as a nurse midwife during the pregnancy and delivery of a child . . ."
Kimpel's vagueness challenge is predicated on her assertion that she practiced lay midwifery, rather than nurse midwifery. Because nurse midwifery is defined by statute, and because the term "lay midwives" appears in the statute without definition, Kimpel argues that the statute does not prohibit her midwifery practice. This argument is without merit.
"[T]he essential purpose of the 'void for vagueness' doctrine is to warn individuals of *Page 994 
he criminal consequences of their conduct." Jordan v. DeGeorge, 341 U.S. 223, 230, 71 S.Ct. 703, 707, 95 L.Ed. 886
(1951). First, these indictments allege conduct that, if proven, would clearly be prohibited by § 34-19-3. Second, the term "lay midwives" appears in § 34-19-3(b), which allows "lay midwives holding valid health department permits," to continue the practice of lay midwifery. Kimpel has never possessed such a permit.[3] This statute clearly prohibits a narrowly defined class of conduct. We therefore find that this statute is neither vague nor ambiguous.
 III.
Kimpel argues that Alabama's midwifery statute is unconstitutional because, she contends, it constitutes an invasion of privacy and violates her right to Equal Protection under the law. These contentions are without merit.
 A.
In Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147
(1973), the Supreme Court recognized that the state has a legitimate interest in providing for the safety of a viable fetus. When the fetus is viable (the court determined that viability begins at the end of the first trimester), the mother's privacy rights are subjugated to the governmental interest in protecting both hers and the child's safety. See also People v. Rosburg, 805 P.2d 432 (Colo. 1991) (holding that under Roe, the right to privacy does not extend to choosing the manner of childbirth, specifically, midwifery), accord Bowlandv. Municipal Court for Santa Cruz County, 18 Cal.3d 479,134 Cal.Rptr. 630, 556 P.2d 1081 (1976). Therefore, the constitutionality protected right to privacy is not violated by a statute regulating the practice of midwifery.
 B.
In an equal protection analysis of a law that does not involve a suspect class, the proper standard of review is whether that statute is rationally related to a legitimate government objective. Village of Belle Terre v. Boraas,416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974).
The Alabama statute regulating the practice of midwifery does not involve a suspect class. Furthermore, as illustrated above, in discussing Roe, protection of the safety of a mother and child during labor and delivery is a legitimate government objective. Therefore, this statute does not violate the equal protection guarantees of either the federal or our state constitution.
The trial court is instructed to set aside its order dismissing the indictments and to restore them to the trial docket for appropriate disposition.
REVERSED AND REMANDED.
TAYLOR, P.J., and McMILLAN, and COBB, JJ., concur;
LONG, J., recuses himself.
[1] Vague or ambiguous criminal statutes are unconstitutional.United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808,98 L.Ed. 989 (1954), Senf v. State, 622 So.2d 435 (Ala.Cr.App. 1993).
[2] Rule 15.7 and § 12-22-91 serve different functions. Rule 15.7 allows the state to preserve the prosecution of an individual if the trial court errs in a way that will be fatal to the state's advancement of that particular case. Section 12-22-91
allows the state to preserve a prosecution if the trial court errs in a way that will be fatal to future prosecutions under that statute.
[3] In fact, no one possesses a valid health department permit for the practice of lay midwifery. This provision was grandfathered in the 1975 Code. All those who previously held these permits have terminated their practice, and the health department no longer issues such permits.